IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JEANETTE ALLEN, as Mother and Next
Friend of WILLIE ALLEN, a Minor,

    Plaintiffs,

v.

CRYSTALCOAST, INC.,

    Defendant.                        Case No. 03-cv-200-DRH

## MEMORANDUM & ORDER

**HERNDON, District Judge**:

### I. INTRODUCTION

On March 29, 2007, the Court issued an Order (Doc. 185) acknowledging Plaintiff's voluntary dismissal without prejudice of defendants Arnesto Segredo and Lifextension Institute, Inc., pursuant to Plaintiff's Motion (Doc. 182).[1] Previously, Plaintiff filed a Motion for Entry of Default as to defendant Crystal Coast, Inc. (Doc. 174), for its failure to answer or otherwise respond to Plaintiff's Second Amended Complaint (Doc. 152). Crystal Coast was the only Defendant of the three Plaintiff had been able to locate and serve. Plaintiff's request for entry of default was granted (Doc. 175), whereby the Clerk made an entry of default for Crystal Coast, pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 55(a)**, on September 7, 2006 (Doc. 177). Plaintiff then properly moved for a hearing to establish Crystal

---

[1] Plaintiff sought dismissal without prejudice so that an action may be subsequently re-filed against them if they can ever located and served (*see* Doc. 173).

Coast's damages, pursuant to **Rule 55(b)(2)** (Doc. 183), so that a default judgment against Crystal Coast could be issued by the Court. The damages hearing was held on April 19, 2007 (Doc. 187). Plaintiff was present and represented by counsel. Although proper notice was served upon Crystal Coast (*see* Doc. 186), neither Crystal Coast nor its counsel attended. After hearing evidence regarding Plaintiff's claims against Crystal Coast and the resultant injuries, the Court took the matter under advisement to access the amount of damages, if any, Plaintiff should be awarded as part of a default judgment against Crystal Coast.

## II. FACTUAL BACKGROUND

The following factual summary is comprised of information documented on the record as well as testimony given during the damages hearing on April 19, 2007. When he was one-year old, Willie Allen, born August 5, 1992, was diagnosed with brainstem ependynoma. As part of his medical treatment, Willie underwent resection, chemotherapy and cranial radiotherapy. Later, it was discovered that Willie's pituitary gland had been effected, and as a result, Willie suffered from a growth hormone deficiency. In order to treat his growth hormone deficiency, in March, 1999, Willie's physicians prescribed a growth hormone called Nutropin AQ ("Nutropin"). Nutropin is manufactured by Genentech (former defendant).

In 2000, Willie's parents received Nutropin first from Coram Prescription Services, Inc., and then from Curascript (former defendant). The Nutropin was delivered to Willie's parents by FedEx and the drug administered to Willie via injection. In June, 2001, his parents were informed by Curascript that the

Nutropin they had been receiving for Willie was counterfeit. The counterfeit drug was allegedly supplied to Curascript by Mediq (former defendant), via Diversified (former defendant), via Crystal Coast (current defendant in default), originating through Lifextension and Arnesto Segredo[2] (former defendants, remaining unserved and dismissed without prejudice).

While taking the authentic Nutropin, Willie showed dramatic improvement in his height. Plaintiff (Willie's mother) alleges that while taking the counterfeit Nutropin, however, Willie did not grow taller; Willie seemed to become lethargic and socially withdrawn, causing him to falter in his studies at school. Additionally, according to Plaintiff, the counterfeit Nutropin caused Willie to become very distrustful of her in administering his shots. After being notified that Willie had been receiving counterfeit Nutropin, Plaintiff ceased administering any Nutropin treatment to Willie for approximately 14 months. Once Willie stopped receiving injections of the counterfeit Nutropin, his parents state that Willie's energy level and attention span returned, he became more social and his studies greatly improved. Although extremely fearful from the experience, in May, 2002, Willie's parents agreed to once again start Willie on a different growth hormone replacement therapy treatment. Willie is now experiencing further linear growth, yet Plaintiff claims Willie's overall height will be reduced by the period of time in which he was not receiving authentic Nutropin, due to the counterfeit Nutropin supplied via Crystal

---

[2] Arnesto Segredo is said to be the owner of Lifextension, Inc.

Coast.

Crystal Coast, owned by William and Elenore Walker, was a wholesale distributor of prescription drugs based in Florida. William Walker is the alias for a man by the name of "Per Oddmund Bjorn Loyning," a Norwegian citizen who had been deported after a 1990 conviction for dealing cocaine in Florida. William Walker was actually the name of Elenore Walker's ex-husband, likely assumed by Loyning in order to operate as Crystal Coast in the United States. The Florida Department of Health launched a full-blown investigation of Crystal Coast, suspending and ultimately revoking Crystal Coast's drug wholesale permit due to its repeated purchases of prescription drugs from unlicensed/unauthorized sources, such as Lifextension and Segredo.

### III. PROCEDURAL HISTORY

This case was removed from Madison County circuit court on the basis of diversity on March 27, 2003 (original complaint filed on February 18, 2003). Initially, Plaintiff filed suit against Curascript and Genentech. There were third party complaints and cross claims filed amongst the various defendants. Plaintiff amended the Complaint on October 23, 2003 (Doc. 39) to add Mediq, Diversified, Crystal Coast, Lifextension and Arnesto Segredo. Plaintiff again amended the Complaint on March 3, 2004 (Doc. 71), pursuant to Court Order (Doc. 69), which dismissed Counts V and VI without prejudice (consumer deceptive practices act and

fraud) of the initial amended complaint, allowing leave to amend.[3]  Upon a stipulation of dismissal, the Court ordered a dismissal with prejudice of Genentech, Curascript, Mediq and Diversified, including all the third party and cross claims, on November 8, 2004 (Doc. 149).  The Court previously approved the settlement of a minor's claim and found the settlement regarding the above-referenced parties to be in good faith (Docs. 145 & 146).

Thereafter, Plaintiffs filed their six-count, Second Amended Complaint on November 8, 2004 (Doc. 152) against defendants Crystal Coast, Lifextension Institute, Inc. and Arnesto Segredo.  Count I of Plaintiff's Second Amended Complaint against Crystal Coast states a claim of negligence.  Count II states a claim of Strict Products liability.  Count III states a claim for breach of implied warranty.  Count IV states a claim of *Res Ipsa Loquitor* of Crystal Coast's negligence.  Count V states a claim for violation of the Consumer Fraud and Deceptive Business Practices Act, **815 ILL. COMP. STAT. 505/2**.  Count VI states a claim for fraud (there is no Count VII in the Second Amended Complaint). Finally, Count VIII states a claim for willful and wanton conduct.  Plaintiff seeks damages against Crystal Coast in excess of $75,000, including punitive, compensatory and exemplary, plus costs.

Plaintiff effectuated service upon a registered corporate agent of Crystal Coast (*see* Doc. 161 - return of service), but has not been able to locate the remaining

---

[3] This is entitled "First Amended Complaint," on the docket even though, technically, it was the second time Plaintiff amended the Complaint.  Thus, what is referred to as the "Second Amended Complaint" (Doc. 152) in this Order is actually the third amendment.

two defendants. Plaintiff believes defendant Segredo is no longer in the country, but may reside in Curacao. As previously explained, defendant Lifextension is owed by Segredo (*see* Doc. 173). Therefore, Plaintiff moved to voluntarily dismiss Lifextension and Segredo without prejudice pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 41** (Doc. 185). Defendant Crystal Coast, on the other hand, never responded or entered its appearance, so Plaintiff moved for an entry of default, which the clerk entered on September 7, 2006 (Doc. 177). Plaintiff now seeks a default judgment be entered by the Court against Crystal Coast, pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 55(b)(2)**, requesting the Court determine the amount of damages owed by Crystal Coast for its liability (Doc. 183).

## IV. DISCUSSION

### A.   Rule 55

When a plaintiff, in seeking a judgment against a defendant in default, is unable to determine a "sum certain" owed by the defaulting party for its liability, the plaintiff shall then apply to the court for a default judgment. **FED R. CIV. P. 55(b)**. Upon a plaintiff's application, the Court may deem a hearing necessary to "determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter . . . ." **FED R. CIV. P. 55(b)(2);** *see also Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, **722 F.2d 1319, 1323 (7th Cir. 1983) (While allegations relating to liability of a defendant in default are taken as true, allegations regarding damages**

**suffered are usually not.**). Thus, unless the amount of damages claimed by a plaintiff "is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in a detailed affidavit," the Court is compelled to conduct a damages hearing. ***Id.* (internal citations omitted)**.[4]

**B.    Determining Damages**

    **1.    Compensatory**

Because Crystal Coast is in default, the Court will accept Plaintiff's allegations as true, thereby leaving no question as to liability. Now, the Court must determine the amount to award Plaintiff in both compensatory and punitive damages, if applicable. Regarding Plaintiff's compensatory damages, testimony was presented during the damages hearing by Plaintiff (Willie's mother) regarding how Willie was actually injured by taking the counterfeit Nutropin. Treatment with the authentic Nutropin seemed very effective and beneficial for Willie – he began growing again. During the period of time Willie was unknowingly taking the counterfeit Nutropin, Plaintiff testified that not only did his growth seem to stagnate, Willie also became very socially withdrawn, had great difficulties learning in school and became

---

[4] The Court may determine the damages now, even though it is possible defendants Segredo and Lifextension could be considered "joint and severally liable," as they are no longer parties to Plaintiff's suit. Therefore, as Crystal Coast is the sole defendant in this matter and has been found in default, it is proper for the Court to proceed to determine damages. ***See, e.g.*, *Dundee*, 722 F.2d at 1324 ("[W]here liability is joint and several, the entry of default judgment against fewer than all defendants in an action is proper [and] . . . a damages hearing may not be held until the liability of each defendant has been resolved.**") As Segredo and Lifextension are no longer parties to this action, it is unnecessary that they first be found liable prior to the Court determination of Crystal Coast's damages. Moreover, the allegations alleged defendants (prior to the voluntary dismissal of the two unserved defendants) to be either *individually* and/or jointly and severally liable.

extremely lethargic.  Upon discovering that Willie had been receiving a counterfeit drug, Plaintiff, in an abundance of caution, decided to take Willie off of the Nutropin injections.  Plaintiff testified that almost immediately after Willie stopped taking the counterfeit Nutropin, his behavior improved and he had more energy.  Later, once she was satisfied it would be safe to allow Willie to receive other growth hormone replacement therapy, Plaintiff agreed to her doctor's recommendation of a different drug.  Once Willie began receiving growth hormone replacement injections again, he began growing.  However, he did not receive this new treatment until approximately 14 months later and so, for a period of over a year, Willie did not grow.

Therefore, due to the counterfeit Nutropin, Willie's growth treatment was delayed – he was deprived of 14 months of additional growth and his physicians believe he may never completely make up for this loss of growth.  As one of Willie's treating physicians, Dr. Brandt, put it: Willie missed over a year's worth of opportunity to grow during a defined period of time when linear growth can occur (see Hearing Ex. 2 - Dr. Gregory Brandt Apr. 16, 2004 deposition, 47:9-21, 65:4-22). As Dr. Hollander also stated, it is unlikely Willie will ever reach the height he may have been had he not been deprived of the 14 months of growth (see Hearing Ex. 3 - Dr. Abby Hollander, M.D., Apr. 27, 2004 deposition, 58:5-11).

The Court found Plaintiff's testimony regarding Willie's injury suffered due to the counterfeit Nutropin to be credible and supported by Willie's medical records (see Hearing [Group] Ex. 1 - medical file).  Aside from the social withdrawal, severe fatigue and difficulty at school experienced while being treated with the

counterfeit Nutropin, the most significant actual injury Willie suffered was this approximate 14-month period of lack of growth. Similar to when the Court must determine damages for loss of life, there is no equation to quantify the monetary value to adequately represent Willie's loss.[5] It was clear that Willie's father, who was present at the damages hearing, was above-average height. Also evident was when standing next to his father, although only a boy of fourteen years, Willie definitely had the genetic potential for substantially further linear growth.

The Court finds that based upon the information above, Willie has experienced actual injury due to Crystal Coast's actions and thus, as it finds Crystal Coast liable, determines Plaintiff should receive $250,000.00 in compensatory damages.

### 2. Punitive

Plaintiff also seeks an award against Crystal Coast for punitive damages. As the Court has found an award of compensatory damages proper, it will consider whether an award of punitive damages must also be given. Although awarding punitive damages is generally disfavored and not allowed for a finding of merely ordinary negligence, such award is appropriate when the defendant is found to have acted with "malice or an evil motive or . . . with a reckless indifference toward the rights of others." ***Parks v. Wells Fargo Home Mortgage, Inc.*, 398 F.3d 937, 942**

---

[5] During the hearing, Plaintiff testified that Willie's medical treatment is paid for by state disability coverage, so Plaintiff is not claiming to be compensated for outstanding medical bills due to the counterfeit Nutropin.

**(7th Cir. 2005) (internal citation omitted)**. The purpose of a punitive damages award is to dispense a pecuniary punishment to the liable defendant and also to deter future conduct of a similar nature. ***See Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 567 (7th Cir. 2006)**.

       The Court cannot think of another situation more deserving of an award of punitive damages than this case. It is apparent Crystal Coast was aware that it was supplying counterfeit Nutropin to other distributors (*see* Hearing Exs. 7 & 8). This was revealed through the Florida Department of Health and now the Nevada State Board of Pharmacy's investigations into Crystal Coast. However, giving them the benefit of the doubt, it is *at least* clear that Crystal Coast knew it was dealing with unauthorized distributors/wholesalers of Nutropin (those being both Lifextension and Arnesto Segredo). This alone signifies reckless indifference towards people ultimately receiving and using the prescription medication distributed by Crystal Coast. Further, Nutropin is available only by prescription from a licensed physician – receiving a medication that is altered or different from the one prescribed can be life-threatening, which further reflects the egregiousness, evil intent and severity of Crystal Coast's actions.

       It also does not stretch the imagination to picture Plaintiff's horror in realizing she had been injecting her own son with a counterfeit drug and not knowing whether he may be injured or even die as a result. No doubt Willie and the rest of his family experienced their own emotional distress as well. Plaintiff and her

husband had already endured years of fear and uncertainty when Willie, as an infant, underwent surgical treatment for a brain tumor. Causing a person to relive this type fear – that Willie's life could again be in jeopardy – just so Crystal Coast could turn a quick profit, is inhumane. Not only does the Court feel Crystal Coast should be punished for its actions, but it is imperative to deter future conduct of a similar nature. In fact, the number of counterfeit drugs infiltrating the country continues to grow despite the government's efforts to put an end to it.[6] Accordingly, the Court finds Plaintiff should receive an award of $1,000,000.00 in punitive damages.

### V. CONCLUSION

Pursuant TO **FEDERAL RULE OF CIVIL PROCEDURE 55(b)(2)**, a judgment of default shall be entered against defendant Crystal Coast for its liability to Plaintiff in the amount of $250,000.00 compensatory damages and $1,000,000.00 punitive damages.

**IT IS SO ORDERED**.

Signed this 11th day of May, 2007.

/s/        David    RHerndon
**United States District Judge**

---

[6] For example, the U.S. Food and Drug Administration ("FDA") has developed a Counterfeit Drug Task Force to work alongside other agencies in an effort "to help protect the nation's drug supply from the threat of counterfeits." **FDA official website, Counterfeit Drug webpage, http://www.fda.gov/counterfeit/ (last visited May 9, 2007).** *See also* Judy Aita, *Counterfeit Drugs Seen as Growing Problem: Companies, Governments Work to Combat Piracy*, (Nov. 16, 2006), http://usinfo.state.gov/xarchives/display.html?p=washfile-english&y=2006&m=November&x=20061116193712xJatiA0.7200128.